UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DONALD J. HAMMOND,<br><br>   Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL, Commissioner of the<br>Social Security Administration,<br><br>   Defendant. | CAUSE NO.: 3:19-CV-450-TLS |

**OPINION AND ORDER**

The Plaintiff Donald J. Hammond seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits. For the reasons set forth below, the Court finds that the ALJ did not properly evaluate the evidence of the Plaintiff's left foot impairment or the opinion evidence as to his ability to lift and carry the weight necessary to perform medium level work. Therefore, reversal and remand for further proceedings is required.

**PROCEDURAL BACKGROUND**

On May 23, 2016, the Plaintiff filed an application for disability insurance benefits, alleging disability beginning on December 3, 2015. AR 56, 146, ECF No. 5. The claim was denied initially and on reconsideration. *Id*. at 74, 81. A hearing was held before the ALJ on May 7, 2018. *Id*. at 11, 34, 88. On August 20, 2018, the ALJ issued a written decision and found the Plaintiff not disabled. *Id*. at 11–20. On June 10, 2019, the Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision. The Plaintiff filed an opening brief [ECF No. 9], the Commissioner filed a response brief [ECF No. 12], and the Plaintiff filed a reply brief [ECF No. 13].

**THE ALJ'S DECISION**

For purposes of disability insurance benefits, a claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of December 3, 2015, through his date last insured of December 31, 2016. AR 13. At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairment of major joint dysfunction. AR 14. Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id.* § 404.1520(a)(4)(iii), (d). The ALJ found that the Plaintiff does not have an impairment or

combination of impairments that meets or medically equals a listing, indicating that he considered Listing 1.02. AR 14.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c). The claimant could occasionally reach overhead with both upper extremities and frequently reach in all other directions with both upper extremities. The claimant could occasionally crawl, work at unprotected heights, and climb ladders, ropes, or scaffolds.

AR 14.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that, through the date last insured, the Plaintiff was capable of performing past relevant work as a sheet metal worker under 20 C.F.R. § 404.1565. AR 18. At step five, the ALJ considers whether the claimant can "make an adjustment to other work" in the national economy given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, although the ALJ found that the Plaintiff is capable of performing past relevant work, the ALJ made an alternative finding at step five that there are other jobs in the national economy that the Plaintiff is also able to perform of assembler, sorter, and laundry laborer. AR 19–20. As a result, the ALJ found that the Plaintiff was not under a disability from December 3, 2015, the alleged onset date, through December 31, 2016, the date last insured. AR 20. The claimant bears the

burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex*

*rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In his appeal, the Plaintiff seeks reversal of the ALJ's decision, arguing that the ALJ failed to properly evaluate the evidence regarding the Plaintiff's left foot impairment, erred in weighing the medical opinion evidence, and erred in evaluating the Plaintiff's subjective symptoms.

**A.    Left Foot Impairment**

At step two of the sequential analysis, the ALJ found the Plaintiff's left foot impairment to be not severe, noting that "[t]he record contains evidence of additional impairments, including cavus foot deformity, deformity of hallux and second metatarsal, and tinnitus." AR 14.[1] The ALJ

---

[1] The Seventh Circuit has explained the step two analysis as follows:
> Impairments are not "severe" when they do not significantly limit the claimant's ability to perform basic work activities, including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 416.921. The SSA has specified

then found, "While these impairments are medically determinable, the record shows that these conditions have *either been responsive to treatment or have not required ongoing treatment*." *Id*. (emphasis added). The ALJ also found that "the record does not contain significant medical findings showing that these impairments more than [minimally] limit the claimant's ability to perform work activities." *Id*. There is no further discussion of the Plaintiff's left foot impairment or the supporting medical records in the ALJ's decision.

The Plaintiff argues that the ALJ failed to properly evaluate the evidence regarding his left foot impairment; the Court agrees. An ALJ "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837 (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski*, 245 F.3d at 887). An ALJ may not discuss "only the evidence that supports his conclusion while ignoring contrary evidence." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (citing *Moore*, 743 F.3d at 1124; *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)).

In June 2016, the Plaintiff was seen by Michael Salcedo, DPM, upon the referral of his pain management physician, Ralph Carbone, D.O., due to pain in his feet and needing his orthotics replaced. AR 416–19. The exam showed ambulation with a steady gait and tenderness to both feet with deep palpation. *Id*. at 418. He was diagnosed with plantar fascia syndrome and acquired cavus foot deformity. *Id*. In July 2016, the Plaintiff reported to Dr. Salcedo that the

---

further that a non-severe impairment is "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96–3p, 1996 WL 374181, at *1 (July 2, 1996). When evaluating the severity of an impairment, the ALJ assesses its functionally limiting effects by evaluating the objective medical evidence and the claimant's statements and other evidence regarding the intensity, persistence, and limiting effects of the symptoms. *Id*. at *2.
*Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016).

orthotics were helping but that he was still having significant foot tenderness; anti-inflammatories was ordered. *Id.* at 413–14. In September 2016, the Plaintiff reported that the orthotics did not seem to be helping and that he had a burning pain. *Id*. at 408. Dr. Salcedo noted bony deformity, gait disturbance, and joint stiffness. *Id*. Dr. Salcedo reviewed x-rays of the left foot showing a cavus foot within the hindfoot and mid-foot area, degenerative arthritis of the left great toe joint, hallux malleus with interphalangeus lateral deformity and flexion contracture, and moderately severe hammertoe. *Id.* at 410.

Dr. Salcedo recommended surgery. *Id.* The Plaintiff underwent surgery on the left foot on October 7, 2016, including hallux rigidus correction with a hallux interphalangeal fusion, arthroplasty fusion of the second toe, metatarsal osteotomy, and repair of the dislocation closed metatarsophalangeal joint. *Id.* at 403–04. At a post-operative visit in December 2016, Dr. Salcedo noted that the Plaintiff was progressing as expected, that he had swelling, and he did not require pain medication. *Id.* at 389.

From September 2016 to July 2017, the Plaintiff continued to be treated by Dr. Carbone for pain, having been evaluated and treated for bilateral shoulder pain and pain in the joint—ankle and foot. *Id.* at 471–75[2]; *see also id.* 417 (Dr. Salcedo's reference to referral from Dr. Carbone). And, he continued to be treated from October 2017 through April 2018. *Id.* at 529–41. Prescription notes within those records indicate that Dr. Carbone prescribed medications, including oxycodone. *Id.* at 535, 541. By way of additional background, in December 2015, the Plaintiff had surgery on his left shoulder to repair a torn rotator cuff, and, in December 2016, he had surgery on his right shoulder. *Id.* at 248–51, 461–62.

---

[2] The treatment records include codes of 719.41 and 719.47, which correspond with "pain in joint, shoulder region" and "pain in joint, ankle and foot," respectively. *See* International Classification of Diseases, https://icdcodelookup.com/icd-10/codes/719.41 (last visited May 7, 2021); *id.* https://icdcodelookup.com/icd-10/codes/719.47 (last visited May 7, 2021).

In March 2017, the Plaintiff reported to his family practitioner, Dr. Dreher, that he had surgery on his left foot in October 2016, but it was still bothering him. *Id.* at 486. Dr. Dreher indicated that he was referring the Plaintiff to another doctor. *Id*. On examination, Dr. Dreher noted abnormal right hammertoes #2 and #3 with left surgical changes and swelling on the first and second MTP dorsally with subjective numbness on the left foot. *Id.* at 488. In July 2017, the Plaintiff reported to Dr. Dreher that he was seeing Dr. Carbone, a pain doctor, for chronic pain in his shoulders and left foot. *Id*. at 477. On a comprehensive foot examination, Dr. Dreher noted abnormal hammertoes right, surgical changes left, and high arches bilaterally. *Id.* at 483. The plan was for the Plaintiff to continue follow up with pain management. *Id.* at 484. However, in summarizing that July 2017 annual wellness exam with Dr. Dreher, the ALJ made no reference to the Plaintiff's feet and wrote only: "A physical examination was unremarkable except for reduced range of motion in the claimant's shoulders." *Id.* at 17 (citing Ex. 8F). In an October 2017 visit to Dr. Dreher, the Plaintiff continued to report persistent left foot pain. *Id.* at 513.

At the hearing, the Plaintiff testified that he had previously been a sheet metal worker, which required him to be on his feet all day and lift in excess of 50 pounds regularly, but he stopped working as a sheet metal worker in 2010 because of his shoulders and feet. *Id.* at 42–45. He started working as a building inspector in 2010 and quit that work in 2015 because he could not crawl in spaces and set up ladders. *Id.* at 43. He testified that he had difficulty climbing or walking downstairs and had to do one step at a time and that reaching out in front of his body and above his head were difficult. *Id.* at 44, 45. Standing and walking caused pain, and it was hard to be on his feet for an extended period of time because it hurt too much. *Id*. at 43, 44. He testified that the surgery on his left foot "never did seem to heal right." *Id*. at 44. Dr. Carbone, his pain management doctor, had been treating him for over two years. *Id*. at 46.

8

While the ALJ generally noted the Plaintiff's testimony that he was unable to work due, in part, to his inability to stand for any length of time and that the Plaintiff's initial disability report alleged an inability to work, in part, due to limited standing and walking time, *see id.* at 15, the ALJ did not acknowledge the underlying cause of those difficulties as the left foot impairment or the specific testimony or medical evidence set out above. On this point, the Commissioner attempts to attribute reasoning to the ALJ that is not supported by the record. The Commissioner writes: "the ALJ *noted that following Plaintiff's October 2016 foot surgery with Dr. Salcedo*, the record reflected that in July 2017, Plaintiff's orthopedic surgeon noted that he was doing well." Def.'s Br. 6, ECF No. 12 (emphasis added) (internal citations omitted). However, the ALJ does not reference the October 2016 foot surgery in that sentence or anywhere in his decision. *See* AR 11–20. Rather, the ALJ noted that the Plaintiff consulted with a new orthopedic surgeon regarding his right shoulder pain, that the Plaintiff had right shoulder surgery in December 2016, that treatment notes following surgery showed good progress and improved range of motion, and that, in July 2017, "the orthopedic surgeon doctor noted he was doing well." *Id.* at 16. (citing 6F (AR 466–68, treatment notes of Dr. Yergler for right shoulder pain)).

Importantly, the state agency medical consultants did not have the evidence from Dr. Salcedo regarding the Plaintiff's left foot impairment for their opinions in September and November 2016. *See id.* at 57–62 (Sept. 14, 2016), 66–73 (Nov. 17, 2016); 386 (submitted July 24, 2017). Their opinions were based on "shoulder pain; OA (osteoarthritis)" but did not address the Plaintiff's left foot impairment. *Id.* at 59, 69. And, in weighing those opinions, although the ALJ noted that the state agency medical consultants lacked medical evidence regarding the Plaintiff's right shoulder surgery, the ALJ failed to note that they also lacked the medical evidence regarding the Plaintiff's left foot pain and surgery. *Id.* at 17.

The ALJ did not discuss any of the medical records or the Plaintiff's testimony regarding the left foot impairment, all of which are internally consistent regarding his ongoing foot pain. Moreover, the ALJ's step-two reasoning that the Plaintiff's foot impairments have "either been responsive to treatment" or have "not required ongoing treatment" is inaccurate. *Id.* at 14. Despite undergoing foot surgery to relieve his pain, the Plaintiff continued to experience pain for which he received ongoing treatment by a pain specialist as discussed above. Although the ALJ cited generally the four exhibits containing the relevant medical records in support of his step two analysis, *see id.* at 14 (citing Exs. 1F, 4F, 5F, and 8F), the failure to discuss the contents of the records and the fact that the records are contrary to the ALJ's conclusion means that the Court cannot trace the path of the ALJ's reasoning. "An ALJ must grapple with lines of evidence that are contrary to [his] conclusion, and here the ALJ did not do so." *Hardy v. Berryhill*, 908 F.3d 309, 312 (7th Cir. 2018) (citing *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014)).

This failure to consider all the evidence of the left foot impairment also appears to impact the RFC for medium work. Although the ALJ's decision provides that "all of the claimant's medically determinable impairments, both severe and non-severe, have been considered in assessing his residual functional capacity," AR 14, it is not clear how the ALJ accounted for the Plaintiff's left foot impairment and pain. *See Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("A failure to fully consider the impact of non-severe impairments requires reversal." (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003))). The RFC for work at the medium exertional level requires lifting up to 25 pounds frequently and no more than 50 pounds, while being on one's feet for most of the workday. *See* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). The ALJ does not discuss the foot impairment in the context of the RFC and does not explain how someone with continuing foot pain, treated with strong medication, could be on his

feet all day while performing strenuous lifting. The failure is not harmless because if the Plaintiff were limited to work at the light exertional level, rather than at the medium exertional level, it appears that a finding of disability would result based on the Plaintiff's vocational profile and Medical Vocational Rule 202.06. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06; *see also Dimmett v. Colvin*, 816 F.3d 486, 488 (7th Cir. 2016) ("But his age makes the distinction between medium and light work critical: a person of his age who has no skills transferable to light or sedentary work is presumptively disabled." (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 201.06, 202.06)).

The failure to address the medical evidence of the Plaintiff's ongoing left foot pain that is consistent with the Plaintiff's subjective complaints requires remand.

**B.     Medical Opinion Evidence**

The Plaintiff also argues that the ALJ erred in the weight given to the opinions of the Plaintiff's treating physicians, Dr. Dreher and Dr. Carbone. The treating physician rule, applicable in this case,[3] provides that the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (explaining that, under the "treating physician rule," the opinion of a treating physician "that is consistent with the record is generally entitled to 'controlling weight'" (citations omitted)). If an ALJ does not give the treating physician's opinion controlling weight, the ALJ must apply the factors set forth in the regulations to

---

[3] On January 18, 2017, the Commissioner published new regulations, "Revisions to Rules Regarding the Evaluation of Medical Evidence," which addressed 20 C.F.R. § 404.1527. However, the new regulations only apply to claims filed on or after March 27, 2017, and the claim in this case was filed in 2016.

11

determine what other weight to give the opinion. 20 C.F.R. § 404.1527(c)(2); *see also Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (requiring an explicit discussion of certain § 404.1527(c)(2) factors on remand).

The factors are whether there is an examining relationship; whether there is a treatment relationship, and if so, the length of the relationship, the frequency of examination, and the nature and extent of the relationship; whether the opinion is supported by relevant evidence and by explanations from the source; the consistency of the opinion with the record as a whole; whether the opinion was offered by a specialist about a medical issue related to the area of specialty; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)–(6). "An ALJ must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citing *Moore*, 743 F.3d at 1127).

The Court finds that remand is required for the ALJ to properly discuss the Plaintiff's lifting limitations based on the opinions of his treating physicians. The ALJ gave an RFC for medium exertion work, *see* AR 14, which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," 20 C.F.R. § 404.1567(c). Dr. Dreher opined on April 23, 2018, that the Plaintiff could safely lift and/or carry 11 to 20 pounds in an eight-hour period, and Dr Carbone opined on March 20, 2018, that the Plaintiff could safely lift and/or carry 5 to 10 pounds in an eight-hour period. AR 527, 545. The ALJ rejected both opinions because the record "demonstrated full muscle strength in both shoulders after recovering from surgery." *Id.* at 18. However, the ALJ did not cite any records in support of that rationale. In fact, the records show that the Plaintiff did not return to full muscle strength. The Plaintiff underwent surgery on his left shoulder in December 2015. *Id.* at 248–51. At the conclusion of physical therapy in June 2016, after completing thirteen sessions, the Plaintiff's

final level of shoulder strength was 3-/5 with flexion and abduction and 4/5 with external rotation. *Id.* at 319, 319–70. A goal of recovering range of motion was only "partially met." *Id.* In December 2016, the Plaintiff underwent surgery on his right shoulder due to findings including a "massive chronic tear on the supraspinatus and infraspinatus" and symptomatic AC joint arthritis. *Id.* at 461–62. At physical therapy for his right shoulder in January 2017, the Plaintiff's *left* upper strength was measured at 3/5, which was over a year after his left shoulder surgery. *Id.* at 453. In July 2017, Dr. Dreher found decreased range of motion in the shoulders. *Id.* at 483. In October 2017, although Dr. Dreher found normal strength and range of motion on musculoskeletal exam, he nevertheless noted chronic right and left shoulder pain. *Id.* at 515–16. The ALJ did not discuss this evidence demonstrating post-operative limitations in strength. *See Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014) (finding "that the ALJ was inappropriately selective in choosing the evidence on which she based her opinion").

In addition, although the ALJ recognized the longitudinal nature of the treating relationship with Dr. Dreher and Dr. Carbone, it is unclear how he factored that relationship into weighing the opinion since it appears that more weight was given to the non-examining state agency physicians. Yet, Dr. Dreher and Dr. Carbone's opinions were generally consistent with each other on the lifting limitation. In addition, Dr. Dreher indicated that he considered both the Plaintiff's left foot pain and bilateral shoulder pain. AR 545. In contrast, the state agency physicians did not have the medical evidence regarding the left foot impairment, and their opinions do not articulate whether or how they considered the Plaintiff's bilateral shoulder impairments in combination with his left foot impairment.

Although an ALJ may rely on the opinion of a state agency medical consultants, when the state agency medical consultants assessed an RFC for medium work in September and

November 2016, they did not have evidence related to the right shoulder surgery or the physical therapy records demonstrating ongoing strength deficit in the left shoulder. Recognizing this lack of updated evidence and the fact that they had not examined the Plaintiff, the ALJ gave their opinions "only partial weight." AR 17. Nevertheless, the ALJ appears to have adopted their opinion as to the lifting limitations of medium work without explaining how the updated medical evidence regarding the right shoulder surgery and the ongoing pain and limited range of motion was more consistent with the ability to perform the lifting and carrying requirements of medium work (up to 25 pounds frequently and no more than 50 pounds) as opposed to light work (up to 10 pounds frequently and no more than 20 pounds) or even sedentary work (lifting no more than 10 pounds at a time). *See, e.g.*, *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016) (finding that the ALJ erred by accepting the state agency medical consultants' opinions despite the fact that they had not examined the claimant and did not have the benefit of many of the treatment records (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014))). Again, the error in weighing the treating physician opinion is not harmless because if the Plaintiff had been given an RFC for light work, it appears that a finding of disability would result based on the Plaintiff's vocational profile and Medical Vocational Rule 202.06. *See* 20 C.F.R. Pt. 404, Subpt. P, app. 2 § 202.06.

**C.     Subjective Symptoms**

Finally, on remand, the ALJ will have an opportunity to explain his evaluation of the Plaintiff's reported activities of daily living as inconsistent with the Plaintiff's subjective allegations of foot and shoulder pain. The ALJ first acknowledged that the Plaintiff's wife takes care of all the household duties but then noted that the Plaintiff "testified that he is able to do light yard work and care for his three-year-old grandson." AR 15. However, this testimony

comes from his response to being asked what he did the day before the hearing, to which he responded, "Mostly I watched TV all day and did some light work around the yard with some leaves and that was basically it." *Id.* at 46. When asked what he does with his grandson, the Plaintiff testified that his grandson "just follows me around." *Id.* at 47. It is unclear how these minimal activities are inconsistent with his asserted limitations, especially in light of the medical evidence set forth above. It is also unclear whether the ALJ considered the efforts the Plaintiff has undertaken through surgery and pain management to alleviate his symptoms and pain. *See* SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017); 20 C.F.R. § 404.1529(c)(3). Finally, it does not appear that the ALJ considered the Plaintiff's long work history or the explanation that he gave for leaving his job as a sheet metal worker in 2010 due to his impairments. *See Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) ("[A] 'claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983))).

**D.     Award of Benefits**

The Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for further proceedings. "An award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005)). Based on the discussion above, an immediate award of benefits is not appropriate.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 9], REVERSES the final decision of the Commissioner of the Social Security Administration, and REMANDS this matter for further proceedings consistent with this Opinion. The Court DENIES the Plaintiff's request for an award of benefits.

SO ORDERED on May 17, 2021.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
